RECEIPT # 76076
AMOUNT $350.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK _J. James_
DATE 10/31/2006

FILED
IN CLERKS OFFICE

2006 OCT 31  P 1:17

U.S. DISTRICT COURT
DISTRICT OF MASS

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ECHOMAIL, INC., | ) |
| Plaintiff, | ) 06 CA 11996 DPW |
| v. | ) CIVIL ACTION NO. |
| ZOE HELENE GREENE a/k/a ZOE HELENE, VISIONROSE, L.L.C., and ZOE HELENE, INC., | ) |
| Defendants. | ) MAGISTRATE JUDGE Bowler |

## COMPLAINT

### INTRODUCTION

1. EchoMail is a leader in providing innovative, award-winning email solutions to its clients. Its business relies on proprietary technologies and proprietary and confidential trade secrets and other information. Through EchoMail's experience and investment in capital, time, and expertise, it has built up substantial goodwill in the marketplace. Defendant Zoe Helene Greene, a/k/a Zoe Helene ("Greene"), a former EchoMail employee, director, and independent contractor has, individually and through the corporate entity defendants, expropriated and misused EchoMail's proprietary and confidential technology, business information, and the product of its creative effort to compete against EchoMail. Indeed, many of the services offered by Greene's new business, VisionRose, and the material used to describe and sell them are verbatim copies of EchoMail materials. The defendants have willfully violated EchoMail's patent, trademark, and copyright rights, and otherwise engaged in unlawful conduct designed to trade on EchoMail's good name and reputation.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because it arises under the laws of the United States. The Court has jurisdiction over the pendant state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same facts and circumstances as the federal claims.

3. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Massachusetts.

## PARTIES

4. EchoMail is a Delaware corporation with a principal place of business at 701 Concord Avenue, Cambridge, Massachusetts 02138. EchoMail offers advanced tools, industry solutions, research services, and total electronics communications management for email and electronic communications for business and government clients. EchoMail is the successor in interest to General Interactive, Inc. and Millennium Productions, Inc.

5. Zoe Helene Greene ("Greene") is an individual currently residing at 18 Woodlink Road, Asheville, North Carolina.

6. VisionRose, L.L.C. is a Massachusetts limited liability company with a principal place of business at 55 Alexander Avenue, Belmont, Massachusetts 02478. Greene is the managing member of VisionRose, L.L.C.

7. On information and belief, Zoe Helene, Inc. is a corporation with a principal place of business at 464 Common Street, # 369, Belmont, Massachusetts 02478, and Greene is an officer, director, and principal stockholder.

## FACTS

### General Corporate and Employment History

8. Greene was a full-time employee of EchoMail or its predecessor corporations

2

between 1994 and Janury 14, 2002 in EchoMail's Cambridge offices. She was a member of EchoMail's board of directors from approximately 1999 to 2001. From Febraury 2002 through approximately 2004, Greene was an independent contractor pursuant to a February 2002 written agreement ("2002 Agreement").

9. As an employee, Greene executed one or more agreements acknowleding that confidential and proprietary information of EchoMail, including customer identities, customer business information, product costs, pricing, business strategies, business solutions, profit margin, sales and marketing strategies, cutomer and supplier records, financial data, and other similar information, whether or not such information constituted a trade secret under applicable law, was the sole property of EchoMail and that disclosure would cause irreparable harm to EchoMail.

10. Greene expressly agreed that "during her employment and thereafter she shall not, directly or indirectly, disclose any Proprietary Information for her own benefit." Greene also agreed that she "shall not take any action whatsoever which may or might disturb any existing or potential business relationship of [EchoMail] . . . ."

11. As an EchoMail employee and later as an independent contractor, Greene had direct and continuous access to the EchoMail's proprietary and patented technology, copyrighted marketing and business development materials, confidential business strategies, confidential client lists, and other proprietary business information and trade secrets.

12. All of EchoMail's software, user and technical manuals, marketing materials, presentations, seminar materials, website content and design, and other written and creative work are protected by copyright. EchoMail has consistently affixed a "©" or equivalent copyright notice and date on such works.

13. EchoMail registered a trademark in the term EchoMail™ (No. 2895356, dated October 6, 2004) in in the U.S. Patent and Trademark Office.

14. EchoMail is the registered assignee and holder of U.S. Patent Nos. 6,718,368 (the "368 Patent"), 6,718,367 (the "367 Patent"), and 6,668,281 (the "281 Patent"), all of which concern EchoMail's proprietary electronic mail handling systems.

15. The 368 Patent was issued on April 6, 2004 and gives EchoMail exclusive rights to:

> a system for automatic generation and reply to messages in an asynchronous communications system, comprising: a message reception means for inputting a first electronic text message into the system; a message natural language filtering and modeling means receiving tile text message from the message reception means, said filtering and modeling means generating a plurality of assigned message characteristics according to natural language analysis of a body portion of the text message, said assigned characteristics indicating factors, including one or more of customer attitude, customer profile, customer education level, and issues presented, upon which a reply will depend, said natural language analysis comprising performing feature extraction to produce a plurality of output signals relating to one or more of keyword frequencies, word co-occurrence statistics, a dimensionally-reduced representation of the keyword frequencies, phoneme frequencies, and structural pattern statistics for any of sentences, paragraphs, and pages; and a message reply composition means receiving said assigned message characteristics, and having an interface for communicating to a reply phrase library database using database queries, and having a proposed text-based reply electronic message output, said message reply composition means performing the following steps to create a grammatically complete, comprehensible and relevant reply electronic message output: retrieving at least one phrase from said phrase library database for each assigned message characteristic received from said filtering and modeling means; combining said retrieved phrases into a grammatically complete, comprehensible and relevant reply electronic text message; and outputting the reply electronic text message.

16. The 367 Patent was issued on April 6, 2004 and gives EchoMail exclusive rights

to:

> a process for filtering and modeling electronic text messages of asynchronous communications systems comprising the steps of: receiving an electronic text-based message via a reception media, said text message having a header and a body, said body containing a natural language text message from an author; performing feature extraction by performing natural language analysis of the text message to produce one or more output signals relating to any of keyword frequencies, word co-occurrence statistics, a dimensionally-reduced representation of the keyword frequencies, phoneme frequencies, structural pattern statistics for any of sentences, paragraphs, and pages, estimated education level of the author, and customer type; performing clustering according to said feature extraction output signals to produce a set of assigned properties based upon the content of the body of the electronic message, said assigned properties including an attitude, one or more issues presented, on or more requests, an author type, and an author's education level; and performing a learning process by receiving said assigned properties, executing relevance ranking and query by example, and learning changes to said assigned properties submitted via a user interface such that rules and thresholds used in said feature extraction means and/or clustering means are updated automatically in real time without operator intervention.

17. The 281 Patent was issued on December 23, 2003 and gives EchoMail exclusve rights to

> a computer-implemented method for performing workflow comprising the steps of: (1) receiving a first message from an originator via an electronic reception means; (2) storing said first message in a first database subsystem; (3) processing said first message to generate a proposed reply message by performing unsupervised classification, said processing including assignment of properties of said message using natural language processing, said properties including an author attitude, issues presented, requests presented, an author type, and an author education level; (4) storing said reply message in said first database subsystem; (5) selecting and extracting said first message and said reply message from said first database subsystem; (6) transferring said extracted first message and extracted reply message to one or more workflow database subsystems; and (7) transmitting said reply message to said originator via an electronic transmission means.

18. Greene prepared drawings for the application for the 281 Patent and otherwise

participated in management discussions concerning the 281 Patent technology, and has direct knowledge of the nature of that technology.

19. The 2002 Agreement expressly provided that the non-disclosure and confidentiality terms of her prior agreements with EchoMail remained in full force and effect.

20. The 2002 Agreement provided that Greene's work for EchoMail, except for certain custom illustrations, shall constitute "work for hire" under the U.S. Copyright Act.

21. The 2002 Agreement transferred the copyright of a single 2001 PowerPoint presentation, titled "Archetypal Psychology and the Digital Age," to Greene. EchoMail retained rights to all other copyrighted material.

22. The 2002 Agreement provided that Greene was permitted to showcase certain work personally performed by her while at EchoMail in her professional biography and portfolio, provided that proper copyright notification is given to EchoMail.

**The Defendants' Infringement and Other Wrongful Acts**

23. On information and belief, Greene and defendants VisionRose, L.L.C., and Zoe Helene, Inc. launched VisionRose, a business offering services and EchoMail's patented technology to clients, in or about February 2003

24. Greene and Zoe Helene, Inc. registered the domain name www.visionrose.com and launched a website at that address.

25. The defendants' website listed dozens of EchoMail clients as being Greene's clients, listed accolades and awards given to EchoMail and represented or implied that they were given to Greene, listed EchoMail publications as Greene's, offered prospective clients services relying on patented EchoMail technology, and otherwise wrongfully attributed the innovations, goodwill, and business successes of EchoMail as Greene's own.

26. The website repeatedly used the EchoMail trademark without attribution and

without a license to do so.

27.    The website included EchoMail copyrighted material without attribution and, in any event, such use would not constitute fair use under applicable law.

28.    On information and belief, Greene and the other defendants expropriated EchoMail strategic marketing materials, presentation and seminar materials, trade secrets and other confidential business information and used them as her own to develop the VisionRose business.

29.    On information and belief, the defendants are soliciting prospective clients using EchoMail's "virtual studio" business model, offering them proprietary EchoMail email solutions within the scope of the 281 Patent, and then outsourcing the work to direct competitors of EchoMail. In essence, the defendants have and continue to offer EchoMail's patented technology for sale to clients without a license or authorization to do so.

30.    When EchoMail learned of the defendant's wrongful conduct, it took immediate steps to protect its proprietary and confidential information and demanded that the defendants take down the web site and cease using EchoMail property. Greene acknowledged that VisionRose used and disclosed EchoMail's proprietary information to lure clients and potential clients from EchoMail.

31.    On or about October 19, 2006, the VisionRose website was no longer available online, but Greene has failed and refused to return all of EchoMail's proprietary information and agree to cease future violations of her agreements with EchoMail and infringement of EchoMail's intellectual property rights.

32.    EchoMail has fulfilled all obligations under any applications agreements with Greene.

## COUNT I
### (Patent Infringement)

33. EchoMail realleges and incorporates by reference herein the allegations contained in the paragraphs above.

34. EchoMail owns and has standing to sue for infringement of the 367 Patent, 368 Patent, and 281 Patent.

35. EchoMail duly registered the 367 Patent, 368 Patent, and 281 Patent.

36. The defendants have infringed one or more claims of the 367 Patent, 368 Patent and 281 Patent by, among other things, offering to sell, selling, and/or using without license or authority patented electronic mail solutions to VisionRose clients.

37. The defendants' infringement is willful because, upon information and belief, the defendants knew or should have known of EchoMail's patents and knew or should have known that the development, offering to sell, selling, and/or use of certain electronic mail solutions would infringe EchoMail's patents. The defendants' infringement has been willful within the meaning of 35 U.S.C. § 284.

38. On information and belief, the defendants continue to engage in the infringement even after receiving notice of the infringement.

39. The defendants have profited from their unlawful actions.

40. Defendants' infringing acts have caused irreparable harm to EchoMail and damages in an amount to be determined at trial.

## COUNT II
### (Copyright Infringement)

41. EchoMail realleges and incorporates by reference herein the allegations contained in the paragraphs above.

42. EchoMail is the legal and beneficial owner of the copyright to its software, website, user and technical manuals, presentations, marketing materials, and other products of its creative effort.

43. The defendants have made unauthorized use of EchoMail's copyrighted material and displayed it publicly and to actual and prospective customers without EchoMail's authorization.

44. The defendants committed their infringement with the knowledge that the material

was EchoMail's property and subject to U.S. copyright laws and that the defendants lacked the authorization to copy and/or use such material.

45.     By virtue of the conducted described herein, the defendants have infringed on EchoMail's exclusive rights under 17 U.S.C. § 106, and are infringers within the meaning of 17 U.S.C. § 501(a).

46.     The defendants have profited from their unlawful actions.

47.     Defendants' infringing acts have caused irreparable harm to EchoMail and damages in an amount to be determined at trial.

## COUNT III
### (Trademark Infringement)

48.     EchoMail realleges and incorporates by reference herein the allegations contained in the paragraphs above.

49.     EchoMail is the legal and beneficial owner of the registered trademark EchoMail™ and uses the term to identify its products, business, and reputation in the marketplace and distinguish itself from competitors.

50.     The EchoMail™ mark creates a distinct, strong impression in the minds of consumers in the marketplace and is capable of protection.

51.     The defendants have knowingly and purposely used the EchoMail™ mark throughout the VisionRose website and in their other communications with actual and prospective clients in an effort to trade on the goodwill and reputation of EchoMail and create confusion in the marketplace.

52.     The defendants have intentionally infringed on the EchoMail™ mark to suggest falsely to actual and potential customers that Greene is responsible for the successes of EchoMail through her own talents and effort, and that actual and potential customers can and should hire Greene and VisionRose, and not EchoMail, because she is no longer affiliated with EchoMail.

53.     Defendants have intentionally used the EchoMail™ mark to create confusion in the marketplace and direct business from EchoMail to Greene and VisionRose.

54.     Greene is the controlling officer and director of the entity defendants and personally directed and engaged in the infringing acts outside her authority as the officer, director, or employee of any of the entity defendants, for which she is personally liable.

55.     The defendants have profited from their unlawful actions.

56. Defendants' infringing acts have caused irreparable harm to EchoMail and damages in an amount to be determined at trial.

## COUNT IV
### (Interference with Contractual and Business Relations)

57. EchoMail realleges and incorporates by reference herein the allegations contained in the paragraphs above.

58. EchoMail has valuable and advantageous contractual and other business relationships with customers, clients, and licensees.

59. The defendants had direct knowledge of such relationships.

60. The defendants knowingly and purposefully interfered with EchoMail's valuable and advantageous contractual and other business relationships, and have profited from such interference.

61. EchoMail has suffered irreparable harm and damages as a consequence of the defendants' acts.

## COUNT V
### (Interference with Prospective Business Relations)

62. EchoMail realleges and incorporates by reference herein the allegations contained in the paragraphs above.

63. EchoMail has valuable and advantageous relationships and prospective relationships of economic benefit with prospective customers, clients, and licensees.

64. The defendants had direct knowledge of such prospective relationships.

65. The defendants intentionally and with improper motive and/or means interfered with such prospective relationships.

66. The defendants have profited from their unlawful actions.

67. EchoMail has suffered irreparable harm and damages as a consequence of the defendants' interference with EchoMail's prospective business relations.

## COUNT VI
### (Conversion)

68. EchoMail realleges and incorporates by reference herein the allegations contained in the paragraphs above.

69. EchoMail's software, manuals, presentations, seminars, strategic and marketing

10

materials, email solutions, business processes, customer lists, and other proprietary and confidential information and trade secrets are the property of EchoMail.

70. At all times, EchoMail had an immediate and superior right to possession of such materials and information.

71. The defendants intentionally and wrongfully converted for their own use and economic benefit EchoMail's materials and proprietary information.

72. The defendants have profited from their unlawful actions.

73. EchoMail has suffered irreparable harm and damages as a consequence of the defendants' unlawful conversion.

### COUNT VII
### (Common Law Misappropriation of Confidential and Trade Secret Information)

74. EchoMail realleges and incorporates by reference herein the allegations contained in the paragraphs above.

75. EchoMail's software, manuals, presentations, seminars, strategic and marketing materials, email solutions, business processes, customer lists, and other information constitute confidential, proprietary and trade secret business information maintained by EchoMail.

76. EchoMail's confidential, proprietary and trade secret business information give EchoMail a competitive advantage in the industry over its existing or would-be competitors.

77. EchoMail took reasonable precautions to protect and preserve the secrecy of its confidential, proprietary and trade secret business information.

78. EchoMail's confidential, proprietary and trade secret business information derive independent economic value from not being generally known to the public or to other persons who can obtain economic benefit from their disclosure.

79. By the actions described herein, the defendants have knowingly acquired, misappropriated, and benefited from EchoMail's confidential, proprietary and trade secret business information by improper means in breach of Greene's confidential relationship with EchoMail.

80. The defendants improperly used EchoMail's confidential, proprietary and trade secret business information for the purpose of, among other things, launching the VisionRose business and its website and marketing its services to prospective and actual customers.

81. The defendants' unlawful conduct constituted misappropriation of confidential,

proprietary and trade secret business information.

82. Greene knew or should have known that the information being offered and used by her, VisionRose, L.L.C., and/or Zoe Helene, Inc. constituted trade secrets or proprietary business information of EchoMail.

83. The defendants have profited from their unlawful actions.

84. EchoMail has suffered irreparable harm and damages as a consequence of the defendants' unlawful acts.

## COUNT VIII
### (Breach of Contract – Against Zoe Helene Greene Only)

85. EchoMail realleges and incorporates by reference herein the allegations contained in the paragraphs above.

86. Greene and EchoMail were parties to one or more enforceable written agreements expressly prohibiting Greene from use or disclosure of EchoMail's confidential, proprietary and trade secret information.

87. Greene breached those agreements by the conduct described herein.

88. EchoMail has been damaged by Greene's breach of contract in an amount to be determined at trial.

## COUNT IX
### (Breach of Fiduciary Duty – Against Zoe Helene Greene Only)

89. EchoMail realleges and incorporates by reference herein the allegations contained in the paragraphs above.

90. As a result of her employment by EchoMail, her position as a director of EchoMail, and her contractual relationship with EchoMail, Greene had a fiduciary obligation not to disclose to any third party any confidential information she acquired from EchoMail during the course of her employment and/or board service, and during the period thereafter while she continued to be paid by EchoMail.

91. Greene breached her fiduciary duty by disclosing and using EchoMail's confidential, proprietary, and trade secret information for her own benefit and profit, as described herein.

92. EchoMail has been damaged by Greene's breach of fiduciary duty in an amount to be determined at trial.

## COUNT X
### (Violations of Mass. Gen. Laws Ch. 93A, § 11)

93. EchoMail realleges and incorporates by reference herein the allegations contained in the paragraphs above.

94. At all relevant times, the defendants were engaged in trade or commerce in Massachusetts.

95. As described herein, the defendants' knowing and willful infringement of EchoMail's patent, copyright, and trademark rights, conversion, misappropriation of EchoMail's confidential, proprietary and trade secret business information, interference with existing and prospective contractual and advantageous business relations and Greene's intentional breach of her agreements with EchoMail, all designed to trade on EchoMail's goodwill and lure customers from EchoMail, constitute unfair or deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A.

96. The defendants' unlawful acts occurred substantially within Massachusetts and were knowing and willful.

97. The defendants have profited from their unlawful actions.

98. EchoMail has suffered damages as a consequence of the defendants' unlawful conduct in an amount to be determined at trial.

## REQUESTS FOR RELIEF

WHEREFORE, EchoMail respectfully requests that the Court:

    A.    Declare that the defendants have infringed or contributed to the infringement of the 367 Patent, 368 Patent, and 281 Patent;

    B.    Declare that the defendants have infringed EchoMail's trademarks;

    C.    Declare that the defendants have infringed EchoMail's copyrights;

    D.    Permanently enjoin the defendants and their officers, directors, subsidiaries, agents, servants, employees, and all other persons in active concert with them from any further infringement or contributory infringement of EchoMail's patents, trademarks, or copyrights;

    E.    Declare that the defendants have misappropriated EchoMail's confidential, proprietary, and trade secret business information;

F. Permanently enjoin the defendants and their officers, directors, subsidiaries, agents, servants, employees, and all other persons in active concert with them from using or disclosing EchoMail's confidential, proprietary, and trade secret business information;

G. Enter judgment for EchoMail and against the defendants on Counts I, II, III, IV, V, VI, VII, and X of the Complaint;

H. Enter judgment for EchoMail and against Greene on Counts VIII and IX of the Complaint;

I. Award EchoMail its full and complete damages resulting from the defendants' wrongful acts;

J. Award EchoMail all single or multiple damages so determined for willful patent infringement, in accordance with 35 U.S.C. § 284;

K. Enter a determination that this case is exceptional within the meaning of 35 U.S.C. § 285, and award EchoMail the costs of this action and reasonable attorneys' fees;

L. Enter a determination that this case is exceptional within the meaning of §53 of the Lanham Act and award EchoMail the costs of this action and reasonable attorneys' fees;

M. Enter judgment and assess damages against Greene personally for her knowing and willful participation in the infringement of EchoMail's trademarks, patents, and copyrights;

N. Order the defendants to return all converted and misappropriated property and information belonging to EchoMail;

O. Award such damages against the defendants as are appropriate under Count X for the defendants' knowing and willful violation of Mass. G.L. c. 93A, § 11, doubled or trebled as the Court deems appropriate, plus all attorneys' fees incurred by EchoMail through the date of entry of judgment;

P. Award EchoMail prejudgment interest at the applicable statutory rate on all damages awarded under each of the above counts; and

Q. Grant such other and additional relief as it may deem appropriate under the facts and circumstances of this case, including awarding EchoMail its costs and attorneys' fees.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS AND ISSUES SO TRIABLE.

                                    ECHOMAIL, INC.
                                    By its attorneys,

                                    James Coyne King (BBO # 272620)
                                    Philip H. Graeter (BBO # 645316)

                                    HANIFY & KING
                                    Professional Corporation
                                    One Beacon Street
                                    Boston, MA  02108
                                    (617) 423-0400

DATED: October 31, 2006